IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC., :

    Plaintiff, :

v. :    Case No. TDC-17-2414

SEAFOOD PALACE BUFFET, INC., *et al.*, :

    Defendants. :

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") filed by Plaintiff J & J Sports Productions, Inc. against Defendants Seafood Palace Buffet, Inc., *et al.* (ECF No. 17.) On February 12, 2018, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Chuang referred this case to me for a report and recommendation on Plaintiff's Motion. (ECF No. 18.) Having considered the submissions of the parties (ECF Nos. 17, 19 & 21), I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted in part and denied in part.

I.    **FACTUAL AND PROCEDURAL HISTORY**

On August 22, 2017, Plaintiff commenced this action against Defendants Seafood Palace Buffet, Inc., Anna Zheng, Meng Wang, and Cynthia Salley Rawls, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 (unauthorized reception of cable services) and 605 (unauthorized publication or use of communications. (ECF No. 1.) The Complaint states that Plaintiff held "the exclusive nationwide commercial distribution (closed-circuit) rights to . . . the 'Mayhem,' Floyd Mayweather, Jr. v. Marcos Rene Maidana, II, WBC World Lightweight Championship Fight Program" (hereinafter, the "Program"), which was

broadcast on September 13, 2014. (*Id.* ¶ 15.) Plaintiff entered into agreements with various commercial establishments that permitted the businesses to exhibit the Program for their patrons. (*Id.* ¶ 16.) Defendants did not enter into such an agreement with Plaintiff to exhibit the Program.[1] (*See id.* ¶ 17.) Defendants acted to "unlawfully intercept, receive, publish, divulge, display [and] exhibit the Program at the time of its transmission at their commercial establishment." (*Id.* ¶ 18.) Service of process was effected on Defendants. (ECF No. 5, 8, 9 & 11.) Defendants did not file an answer or responsive pleading within the requisite time period. Plaintiff moved for entry of default as to each of the Defendants on November 15, 2017. (ECF Nos. 12, 13, 14 & 15.) The Clerk's Entry of Default as to each of the Defendants was entered on January 16, 2018. (ECF No. 16.) Thereafter, Plaintiff filed the instant Motion (ECF No. 17).

## II.   LEGAL ANALYSIS

### A.   Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26,

---

[1] According to Plaintiff's Complaint, Defendants Anna Zheng, Meng Wang, and Cynthia Salley Rawls are the managing members of Defendant Seafood Palace Buffet, Inc. (ECF No. 1 ¶ 6.) In addition, Defendants Zheng, Wang, and Rawls are "specifically identified on the Prince George's County Alcoholic Beverage Retail License issued for Seafood Palace Buffet," and had the right, ability, and obligation to supervise the activities of Seafood Palace Buffet. (*Id.* ¶¶ 8-9.) Nonetheless, Defendants Zheng, Wang, and Rawls "specifically directed the employees of Seafood Palace Buffet . . . to unlawfully intercept and broadcast Plaintiff's Program," or alternatively, are responsible for the actions of Seafood Palace Buffet "by virtue of their acknowledged responsibility for [its] actions." (*Id.* ¶ 10.) Although Defendants Seafood Palace Buffet, Zheng, and Wang dispute these allegations in their opposition (ECF No. 19), the Court is required to accept as true the well-pleaded factual allegations of the Complaint as to liability. Because the allegations of the Complaint as to liability relate to each of the Defendants, the Court will find that all of the Defendants are liable.

2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

B.  **Liability**

Plaintiff's Complaint seeks damages under two statutes, 47 U.S.C. § 605 and 47 U.S.C. § 553. As Plaintiff concedes, however (*see* ECF No. 17-6 at 5), courts in this district have previously held that plaintiffs cannot recover under both statues for the same conduct, and generally allow for recovery under § 605 as it provides for the greater recovery. *See J & J Sports Productions, Inc. v. Royster, et al.*, No. RWT-11-1597, 2014 WL 992779, at *3 (D. Md. Mar. 13, 2014); *J & J Sports Productions, Inc. v. Frank Little Enterprises, LLC*, No. DKC-12-0997, 2012 WL 6019366, at *2 (D. Md. Nov. 30, 2012).

Taking as true the well-pleaded allegations of the Complaint (ECF No. 1), Defendants' liability is readily established in this case. To prove a violation of § 605(a), Plaintiff must show that Defendants, without authorization, received and divulged the Program. *See That's Entm't, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993). Plaintiff entered into a contract that granted it the right to distribute the Program. (ECF No. 1 ¶ 15.) Defendants unlawfully exhibited the Program to the patrons at their establishment. (*Id.* ¶ 18). Accordingly, I find that Plaintiff has stated a claim for relief under 47 U.S.C. § 605 (Count I). Because Plaintiff cannot recover under both Count I and Count II of the Complaint, I recommend that Plaintiff's Motion for Default Judgment be granted as to Count I (47 U.S.C. § 605) and denied as to Count II (47 U.S.C. § 553).

C.  **Damages**

1.  **Statutory damages**

Having determined that Plaintiff has established liability, it is now appropriate to determine the damages to which Plaintiff is entitled. Plaintiff acknowledges that it "cannot recover under both statutes for the same conduct," and elects to recover under only 47 U.S.C. § 605. (ECF No. 17-6 at 5.) Specifically, Plaintiff requests statutory damages pursuant to §

605(e)(3)(C)(i)(II). (*Id.*) Judge Nickerson set forth the relevant considerations in the statutory damages analysis under 47 U.S.C. § 605(e)(3)(C)(i)(II) in *J & J Productions, Inc. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010) (internal citations omitted):

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1,000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising its discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. The other approach to calculating damages is to award a flat sum per violation.

Plaintiff seeks statutory damages in the amount of $4,000.00, which is the cost that Defendants would have incurred had they purchased the Program legally. (ECF No. 17-6 at 6.) This amount is based on the Rate Card submitted by Plaintiff, which states that an establishment with a capacity of 101-200 people must pay $4,000.00 for the rights to display the Program. (ECF No. 1-1 at 5.) Plaintiff's private investigator estimated that the capacity of Defendants' establishment is 200 people. (*Id.* at 2.) Courts in this district have previously accepted the cost to purchase a license to broadcast a program as the appropriate amount of statutory damages. *See, e.g. Henriquez Batres, Inc.*, 2017 WL 2937936, at *3; *J & J Sports Productions, Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *3 (D. Md. Jan. 12, 2016). Defendants do not oppose an award of statutory damages in the amount of $4,000.00. (ECF No. 19 at 3.) I recommend that the Court award Plaintiff $4,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

## 2. Enhanced damages

In determining whether enhanced damages are warranted, courts have examined several factors: "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353, at *2. Here, Plaintiff seeks enhanced damages in the amount of $12,000.00 (ECF No. 17-6 at 7), which is three times the amount of the statutory damages it seeks.[2] The circumstances of Defendants' display of the Program counsels against awarding enhanced damages in this amount. The Plaintiff's private investigator was not required to pay a cover charge, Defendants' establishment was substantially below capacity during the Program (the private investigator counted between 55 and 90 people), and there is no evidence that Defendants advertised that they would be showing the Program. There is also no evidence that Defendants have previously violated the statutes on which Plaintiff bases its claims. Nonetheless, "some enhanced damages are proper to deter potential future unlawful uses of communications." *J & J Sports Productions, Inc. v. Sabor Latino Rest., Inc.*, No. PJM-13-3515, 2014 WL 2964477, at *3 (D. Md. June 27, 2014). Defendants did intercept the Program and exhibited it for direct or indirect financial advantage. Defendants and others similarly situated must be deterred from doing so in the future. Considering all of these factors, I find that enhanced damages in the amount of $8,000.00, which is two times the amount of statutory damages that Plaintiff seeks, is appropriate. This amount is

---

[2] In previous cases, courts in this district have denied J & J's requests for enhanced damages because "J & J ha[d] repeatedly ignored the precedent set forth by courts in this jurisdiction, and sought to recover the maximum amount of damages under § 605, $100,000.00." *Henriquez Batres, Inc.*, 2017 WL 2937936, at *4. Because J & J is not requesting the maximum amount of damages in this case, the "wholesale denial of enhanced damages is not warranted." *Id.*

in line with the enhanced damages that have been awarded in similar cases. *See J & J Sports Prods., Inc. v. El Rodeo Rest. LLC*, No. TDC-16-3631, 2017 WL 6333874, at *3 (D. Md. Dec. 12, 2017) (awarding enhanced damages equal to two times the amount of statutory damages); *Plaza Del Alamo, Inc.*, 2016 WL 153037, at *4 (same); *J & J Sports Prods., Inc. v. Shiva Foods, Inc*, No. PWG-14-2049, 2015 WL 2452421, at *4 (D. Md. May 19, 2015) (same). Defendants' argument does not persuade me otherwise. Even assuming the truth of the statements contained in the "Joint Affidavit of Anna Zheng and Meng Wang" (ECF No. 19-1), there is still a need to deter the Defendants and similarly situated business owners and businesses from engaging in similar conduct. This is the case even if Defendants Zheng and Wang had no "operational role" at the restaurant at the time of the broadcast of the Program. I recommend that the Court award enhanced damages in the amount of $8,000.00.

### D. Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and relevant costs incurred pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Having found that Defendants violated § 605(a), Plaintiff is an "aggrieved party" who "prevailed" for purposes of § 605(e)(3)(B)(iii) and is entitled to recover its costs, including reasonable attorneys' fees. *See Mumford*, 2013 WL 210623, at *1. To determine what constitutes reasonable attorneys' fees, the Court calculates the lodestar amount (the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) and then determines whether an adjustment is warranted by considering the factors enunciated in *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4)

the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. The party seeking attorneys' fees bears the burden of proving the reasonableness of the amount sought. *Mumford*, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009)).

Plaintiff has submitted an affidavit (ECF No. 17-11) in support of its claim for fees and costs. The affidavit attests that Plaintiff's attorneys expended a total of 4.7 hours working on this case. At an hourly rate of $350.00 for Richard Kind, Esq. (a member of the bar for 40 years) and $200.00 for Ryan Kind, Esq. (a member of the bar for 3 years), Plaintiff incurred $1,330.00 in attorneys' fees.[3] As other courts have found in similar circumstances, I find that the attorneys' fees that Plaintiff incurred are reasonable "because the hours expended are modest and the hourly rate[s] [are] within the acceptable range." *J&J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *3 (D. Md. Apr. 20, 2017); *see also J & J Sports Prods., Inc. v. Three Bros. of Hyattsville, LLC*, No. CBD-15-1327, 2017 WL 4347837, at *1 (D. Md. Sept. 29, 2017) (discussing the years of experience of Plaintiff's attorneys). I recommend that Plaintiff be awarded attorneys' fees in the amount of $1,330.00.

In addition, Plaintiff incurred costs in the amount of $1,375.00, which are described in the Statement of Costs and Fees attached to Richard Kind's affidavit (ECF No. 17-12.) One of the costs listed in the Statement of Costs and Fees is an "Investigator Fee" for $650.00. (*Id.* at 1,

---

[3] According to the guidelines set forth in Appendix B to the Court's Local Rules, a reasonable hourly rate for lawyers admitted to the bar for less than five years is $150-225, and a reasonable hourly rate for lawyers admitted to the bar for more than twenty years is $300-475. The Local Rules are available online at http://www.mdd.uscourts.gov/local-rules.

8

3.) Defendants object to this fee, noting that the invoice does not appear to relate to this case. (ECF No. 19 at 5.) The date of the invoice is October 28, 2014, which is more than one month after the date of the Program. (ECF No. 17-12 at 3.) The names on the invoice do not correspond with the investigator who viewed the Program at Defendants' premises. The invoice refers to "UFC 173/5-24-14" in the "Event & Date" section, which seems likely to refer to an event that occurred on May 24, 2014. *See Joe Hand Promotions, Inc. v. Meunier*, No. 15-1334-LEK-TWD, 2016 WL 3659913, at *1 (N.D.N.Y. June 30, 2016) (referring to a complaint alleging that defendants exhibited "UFC 173: Barao v. Dillashaw" . . . on May 24, 2014"). And unlike the other costs sought by Plaintiff, there is no evidence that this invoice has been paid. Although Defendants pointed out these deficiencies in their Opposition (ECF No. 19 at 5), Plaintiff did not address the deficiencies in its Reply (ECF No. 21). I find that Plaintiff has not sustained its burden to show that it incurred $650.00 in costs in connection with its investigator, that such costs are related to this case, and that such costs are reasonable. I recommend that the Court deny Plaintiff's request for $650.00 in costs for its investigator.

Defendants also object to the $75.00 in costs for the service of process billed to Plaintiff with respect to Defendant Cynthia Salley Rawls. (ECF No. 19.) Defendants do not cite any authority to support their argument that they "should not be held responsible" for this cost. The statute directs the Court to "direct the recovery of full costs . . . to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B). The "recovery of full costs" necessarily includes the cost for service of process on Defendant Rawls. I recommend that Plaintiff be award the $75.00 in costs for the service of process for Defendant Rawls. Defendants do not object to the remaining costs

sought by Plaintiff, which amount to $650.00.⁴ I recommend that the Court award Plaintiff $725.00 in costs, which is comprised of the total costs sought by Plaintiff minus the $650.00 "Investigator Fee."

### III. CONCLUSION

In sum, I recommend that:

1. The Court grant Plaintiff's Motion for Default Judgment (ECF No. 17) against Defendants as to Count I and deny the Motion as to Count II;

2. The Court award Plaintiff a total of $14,055.00 (consisting of $4,000.00 in statutory damages, $8,000.00 in enhanced damages, $1,330.00 in attorneys' fees, and $725.00 in costs).

I also direct the Clerk to mail a copy of this Report and Recommendation to the Defendants at the addresses listed on Plaintiff's Complaint (ECF No. 1). Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

May 31, 2018  /s/
Date  Timothy J. Sullivan
  United States Magistrate Judge

---

⁴ The costs to which Defendants do not object include: (1) $400.00 filing fee; (2) $25.00 courier fee; (3) $55.00 process server fee for Zheng; (4) $80.00 process server fee for Wang; and (5) $90.00 process server fee for Seafood Palace Buffet. (*See* ECF No. 17-11 at 2.)